UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAENE A. PIONTEK,

                Plaintiff,

v.                                          Case No. 24-cv-1558-pp

DR. ONJUKKA, *et al.*,

                Defendants.

---

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM**

---

Plaintiff Laene A. Piontek, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law. On December 12, 2024, the court received the full $405 filing fee. This decision screens the plaintiff's complaint and dismisses it for failure to state a claim. Dkt. No. 1.

**I.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint names as defendants Green Bay Warden Christopher Stevens, Correctional Officer Shelley Tilot, Lieutenant Anthony Matushak, Dentist Doctor Onjukka, institutional complaint examiner Zack Paul and staff representative Zenobia Haniff. Dkt. No. 1 at ¶4. The complaint also names Corrections Complaint Examiner Emily Davidson and Cindy O'Donnell of the Office of the Secretary. Id. at ¶5. The plaintiff sues all defendants in their individual capacities. Id. at ¶¶4–5.

The plaintiff alleges that on June 14, 2024, he had a dentist appointment at Green Bay. Id. at ¶6. He says he told a dental assistant about his various dental needs and demanded to be seen timely. Id. The plaintiff says that he asked the assistant to "move up on the list" to be seen and "stated jokingly" that if he were not, he would "have to take the air conditioner," which he previously helped install. Id. at ¶7. He told the assistant "that he knew his rights and stated that he would file both a complaint and a lawsuit if he was treated the way that he thought he would be." Id. at ¶6. He says that it "is in fact normal practice" at Department of Corrections (DOC) institutions for incarcerated persons to threaten to file lawsuits and complaints if they do not get moved up on the wait list. Id. at ¶10. The plaintiff asserts that the DOC requires an incarcerated person to file an informal, verbal complaint before he can file a formal institutional complaint. Id.

Dr. Onjukka overheard this conversation, came into the room and told the plaintiff that he would give him a conduct report for threatening and soliciting staff. Id. at ¶8. The plaintiff insists that it was his threat to file a complaint and lawsuit, not his request for preferential treatment or his comment about the air conditioner, that led to Onjukka giving him the conduct report. Id. Onjukka called Officer Tilot, to whom the plaintiff tried to explain the situation. Id. at ¶9. The dental assistant also told Onjukka and Tilot that the plaintiff was joking, but they refused to listen. Id. Tilot wrote the plaintiff a conduct report for threatening and soliciting the dental assistant. Id. at ¶11. The plaintiff says that the report makes no mention of the plaintiff's "joke" or the dental assistant agreeing that he was joking about taking the air conditioner. Id. at ¶12.

On June 17, 2024, Lieutenant Matushak delivered the conduct report to the plaintiff at his cell, telling the plaintiff that he was "lucky" that Matushak was "not sending [him] to the hole." Id. at ¶13. He offered the plaintiff an uncontested disposition of sixteen days' confinement, but the plaintiff requested a due process hearing. Id. Matushak told the plaintiff that he would be the hearing officer, and that he likely would give the plaintiff a higher disciplinary sentence. Id. The plaintiff characterizes this as a threat, and says that Matushak lacked authority to increase his punishment just because he requested a hearing. Id. On June 19, 2024, Zenobia Haniff met with the plaintiff and gave him forms to file to request witnesses, but refused to answer any questions about the forms or witnesses. Id. at ¶15. The plaintiff says that

Haniff violated DOC rules for staff representatives and did "effectively nothing." Id. at ¶16.

On June 25, 2024, the plaintiff had his due process hearing. Id. at ¶17. He says that Matushak refused to allow him to call the dental assistant and another officer as witnesses, and that Haniff again "did nothing." Id. Matushak found the plaintiff guilty of both counts (threats and soliciting an employee) and imposed a disciplinary sanction of twenty-one days' confinement. Id. Matushak told the plaintiff that he had watched security camera footage of the incident, but the plaintiff says he later learned that no footage exists. Id. at ¶18. The plaintiff appealed his disciplinary conviction, but Warden Stevens affirmed Matushak's decision and the imposed discipline. Id. at ¶¶19–20. Stevens noted that Onjukka "did not take this as a joke." Id. at ¶20.

The plaintiff alleges that he "filed numerous complaints" against the defendants about this incident. Id. at ¶21. He says that Zack Paul dismissed one of his complaints, that Stevens affirmed the dismissal and that the plaintiff appealed. Id. He asserts that Davidson affirmed the dismissal of his complaint, and that O'Donnell "signed off on the dismissal." Id.

The plaintiff avers that he "attempted to file" four more complaints about the incident, alleging retaliation, falsification of information, violation of DOC regulations and other issues. Id. at ¶22. Paul rejected each of these complaints as untimely or previously addressed. Id. The plaintiff alleges that Paul told him that he had to file each of his issues separately under DOC rules, but that the plaintiff was able to file only one complaint per week (also under DOC rules).

Id. He accuses Paul of refusing to process his complaints, which "forced [the plaintiff] outside of the 14 day statute of limitations," and then dismissing his complaints as untimely. Id. He insists that Paul "does this to hide misconduct," and says that another incarcerated person can testify to that. Id. at ¶23. He also alleges that Stevens knows about Paul's misconduct but has failed to take any corrective action. Id.

The plaintiff claims that Onjukka retaliated against him for threatening to file a complaint by "forc[ing] a conduct report to be written when he knew full well that Plaintiff had been joking" about the air conditioner. Id. at ¶24. He says that Matushak retaliated against him by imposing twenty-one days' confinement as punishment after the due process hearing—more than the sixteen days he offered the plaintiff before the hearing. Id. at ¶25.

The plaintiff claims that Matushak and Haniff denied him his right to due process by failing to allow him to present witnesses at his due process hearing. Id. at ¶26. He claims that Stevens failed to correct Matushak's errors in the due process hearing despite the plaintiff filing an appeal from the hearing and his grievances notifying Stevens of the issues. Id. at ¶27. The plaintiff claims that Paul intentionally forced him to file multiple complaints about his concerns, then rejected them as untimely. Id. at ¶28. He says this violated his right to an "adequate post-deprivation remedy." Id.

The plaintiff claims that Onjukka, Matushak, Tilot, Stevens, Haniff and Paul were negligent in the performance of their job duties. Id. at ¶¶29–36. He also seeks to proceed on state law claims of libel and slander against Onjukka,

Tilot and Matushak for writing the conduct report that he says "black-listed [him] from future work assignments and that led to the termination from [his] job as a maintenance worker." Id. at ¶38. He seeks declaratory relief that the defendants violated his rights, injunctive relief ordering the DOC to give him a rehearing or expunge the disciplinary charges from his record and punitive and compensatory damages. Id. at p.11.

C.  Analysis

The plaintiff first claims that Onjukka retaliated against him for threatening to file a complaint or lawsuit about dental services if he were not moved up the waitlist or provided preferential treatment. The court analyzes these allegations under the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity" and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783).

The plaintiff's allegations do not state a claim of retaliation for two, independent reasons. First, although the filing of complaints or lawsuits generally is protected activity, see Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020), the plaintiff hasn't alleged that he filed a complaint or lawsuit. He says he only *threatened* to file a complaint or lawsuit and only "if he was treated the way that he thought he would be" by not receiving immediate treatment or a higher place on the waiting list. Dkt. No. 1 at ¶6. Threatening to

7
Case 2:24-cv-01558-PP    Filed 01/31/25    Page 7 of 18    Document 4

file a grievance or lawsuit is not protected conduct under the First Amendment. See Bridges, 557 F.3d at 555 ("[I]t seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance."). The plaintiff attempts to characterize his threat to file a complaint as an informal complaint, which he is required to lodge before filing an official grievance. See Wis. Admin. Code §DOC 310.07(1). But he says his complaint was about a *potential* delay in receiving dental treatment that he believed he *might* face. He does not allege that his treatment *was* delayed when he made his threat, and he says threatened to complain or sue only *if* it were delayed.

Second, even if the plaintiff's complaint constituted protected conduct, he has not alleged facts showing that his conduct (threatening to file the grievance or lawsuit) was the motivating factor for him receiving the conduct report. To prove this third element, the plaintiff must show that the protected activity was "a 'but-for' cause" of the adverse action, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." Nieves v. Bartlett, 587 U.S. 391, 398–99 (2019); see Winston v. Fuchs, 837 F. App'x 402, 404 (7th Cir. 2020). The plaintiff alleges that he received the conduct report for threatening and soliciting the dental assistant. He insists that he joked about stealing the air conditioner, but Stevens told the plaintiff in his decision affirming the plaintiff's disciplinary conviction that Onjukka did not interpret the plaintiff's comment as a joke. This suggests that Onjukka "'would have reached the same decision'" to issue him a conduct report based on his perceived threat to steal the air conditioner and attempt to solicit the

dental assistant for favorable treatment (moving up on the wait list). Green v. Doruff, 660 F.3d 975, 979 (7th Cir. 2011) (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)); see also Wright v. Funk, Case No. 19-CV-37, 2020 WL 4219845, at *4 (W.D. Wis. July 23, 2020) (quoting Nelson v. Stevens, Case No. 18-CV-238, 2020 WL 2112270, at *17 (W.D. Wis. May 4, 2020), aff'd, 861 F. App'x 667 (7th Cir. 2021)) (noting that a claim of retaliation fails where an official has "'sufficient, objective information' that the prisoner had violated prison rules"), *aff'd*, 853 F. App'x 22 (7th Cir. 2021). For either of these reasons, the plaintiff fails to state a claim against Onjukka.

The plaintiff next alleges that Matushak, Tilot and Haniff violated his right to due process regarding his disciplinary charges and hearing. The Fourteenth Amendment governs this claim. See Wolff v. McDonnell, 418 U.S. 539, 563–66 (1974). The "Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." Isby v. Brown, 856 F.3d 508, 524 (7th Cir. 2017). To proceed on this claim, the plaintiff must show that "(1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007) (citing Rowe v. DeBruyn, 17 F.3d 1047, 1053 (7th Cir. 1994)).

The plaintiff has not alleged facts showing that he had a protected interest entitling him to due process protections. There is no due process right not to be charged with or convicted of a prison disciplinary offense. Wolff, 418 U.S. at 564–71. That means that, on its own, the mere fact that Tilot wrote a

9

conduct report that the plaintiff believed contained false or inaccurate information does not give rise to due process protections. "Issuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right." Black v. Lane, 22 F.3d 1395, 1402 (7th Cir. 1994) (citing Cain v. Lane, 857 F.2d 1139, 1145 (7th Cir. 1988)). But as the court explained above, the plaintiff was not exercising a constitutional right when he received the conduct report.

A prison restriction may create a protected interest only if it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Prison restrictions must constitute "a sufficiently large incremental reduction in freedom to be classified as a deprivation of liberty" under Sandin. Paige v. Hudson, 341 F.3d 642, 643 (7th Cir. 2003). The plaintiff says that the only discipline he received from this conduct report was twenty-one days' cell confinement. That is not an atypical or significant hardship relative to ordinary prison life, nor does it constitute a sufficiently large reduction in the plaintiff's freedom. See Russ v. Young, 895 F.2d 1149, 1152 (7th Cir. 1989); Akbar v. Gross, 816 F. Supp. 501, 503 (E.D. Wis. 1993). That means due process was satisfied by the plaintiff receiving notice of the charges and an opportunity to present his version of events, which he was able to do at the hearing. See Adams v. Reagle, 91 F.4th 880, 895–96 (7th Cir. 2024) (citing Westefer v. Neal, 682 F.3d 679, 684–85 (7th Cir. 2012)). Because the plaintiff was not entitled to

a hearing, he cannot state a due process claim about not being able to present witnesses or receiving inadequate help from Haniff at the hearing.

The plaintiff alleges that Matushak violated his rights by imposing a harsher penalty after the hearing (twenty-one days' confinement) than the penalty he offered in the uncontested disposition without a hearing (sixteen days confinement). These allegations do not state a claim. Matushak was allowed to offer the plaintiff a lower disciplinary sentence if he accepted the charges and declined the hearing. See Nelson, 2020 WL 2112270, at *14 (noting the absence of "*any* case law that even calls into question the practice of a hearing officer proposing an agreed upon disposition before proceeding with a hearing"). In making that offer, Matushak "was acting more like a prosecutor offering a criminal defendant a plea deal." Id. at *13. By requesting the hearing, the plaintiff opened himself up to the possibility of a more significant punishment because Matushak "had discretion to impose a more severe disposition." Id. at *14. Matushak did not violate the plaintiff's rights by imposing a more severe punishment after the hearing than the punishment he offered the plaintiff in exchanged for an uncontested resolution.

The plaintiff next alleges that Stevens failed to intervene and correct Matushak's actions. "Under § 1983, if a supervisory official approves an unconstitutional action before it occurs, he can be held liable for causing the violation. But after the conduct at issue is completed, there is nothing the official can do to stop it, so she cannot be held liable." Phillips v. Mega Concrete Constr., LLC, Case No. 20-CV-658, 2022 WL 252100, at *8 (W.D. Wis.

Jan. 27, 2022) (citing Nanda v. Moss, 412 F.3d 836, 842–43 (7th Cir. 2005); and George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)). The plaintiff alleges the latter; he says that Stevens did not grant his appeal from his disciplinary hearing and order a new hearing and did not take any actions in response to the plaintiff's grievances. He does not allege that Stevens was aware of Matushak's alleged action before Matushak acted but failed to intervene. Stevens has no obligation to take after-the-fact corrective action towards subordinate staff. See Courtney v. Devore, 595 F. App'x 618, 620 (7th Cir. 2014) (citing Burks v. Raemisch, 555 F.3d 592, 595–96 (7th Cir. 2009)).

To the extent that the plaintiff seeks to proceed on a claim challenging his denied appeal from his disciplinary hearing, he cannot raise that challenge in this §1983 suit. If the plaintiff believes that his charges are invalid or that his appeal was wrongly decided, his recourse is to file a *habeas corpus* petition. He cannot challenge his disciplinary conviction under §1983 without showing that it has been invalidated or overturned. See Edwards v. Balisok, 520 U.S. 641, 646 (1997); Heck v. Humphrey, 512 U.S. 477, 486 (1994). Nor can the plaintiff proceed on a claim that officials violated DOC policy or regulations; that allegation does not state a federal claim. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017); Staples v. Casperson, 6 F. App'x 481, 483 (7th Cir. 2001).

The plaintiff seeks to proceed against staff from the institutional complaint examiner's office who recommended dismissing his administrative complaints, accepted those recommendations, reviewed his appeals and/or

dismissed his appeals. But prison officials do not violate an incarcerated person's rights by rejecting "an administrative complaint about a completed act of misconduct." George, 507 F.3d at 609–10. Officials who "merely review[] a grievance or appeal cannot be liable for the conduct forming the basis of the grievance." Stankowski v. Carr, Case No. 23-2458, 2024 WL 548035, at *2 (7th Cir. Feb. 12, 2024) (citing Owens v. Evans, 878 F.3d 559, 563 (7th Cir. 2017)). The plaintiff has not stated a claim against Paul, Stevens, Davidson or O'Donnell for reviewing or rejecting his administrative complaints or appeals.

The plaintiff alleges more against Paul. He says that Paul rejected his administrative complaint asserting multiple issues about the June 2024 incident and told the plaintiff he could include only one issue per complaint. When the plaintiff attempted to file multiple complaints at once—each about a single issue—Paul told him that he could file only one complaint per week. The plaintiff refiled a single complaint about a single issue, which made its way through the administrative complaint system. The plaintiff then sought to refile his other complaints about the other issues, but Paul rejected them as untimely. The plaintiff says these actions were intentional and violated his rights to an adequate post-deprivation remedy.

The plaintiff has not stated a claim against Paul for two reasons. First, the plaintiff has no inherent right to a prison grievance system. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). That means he cannot state a claim about the "alleged mishandling of [his] grievances by persons who otherwise did not cause or participate in the underlying conduct." Owens v.

Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). The plaintiff does not allege that Paul had anything to do with his conduct report or the alleged retaliation, so Paul cannot be liable for that conduct.

Second, what the plaintiff describes is Paul doing his job exactly as he was supposed to. The plaintiff says that "telling a prisoner to wait to file a grievance, then making that wait an excuse for the complaint to be untimely, has been misconduct making the exhaustion process unavailable." Dkt. No. 1 at ¶23 (citing Wilder v. Sutton, 310 F. App'x 10, 13 (7th Cir. 2009)). But that is not what the plaintiff alleges happened. The plaintiff does not allege that Paul told him to wait to file a grievance and used that delay as an excuse to reject the grievance. He admits that he filed "numerous complaints" at once, all about the June 2024 incident, and says that Paul returned the complaints and explained that under DOC rules, the plaintiff could include only one issue per complaint and only one complaint per calendar week. Those *are* the DOC rules for institutional complaints. See Wis. Admin. Code §DOC 310.07(5) ("Each complaint may contain only one clearly identified issue."); 310.07(7) ("An inmate may not file more than one complaint per calendar week," except issues related to health and personal safety).

The plaintiff could state a claim against Paul if he had alleged that Paul "refus[ed] to do [his] job" and left the plaintiff "to face risks that could be averted by faithful implementation of the grievance machinery." Burks, 555 F.3d at 595. But the plaintiff does not allege that Paul misapplied the rules or refused to do his job. "He contends, instead, that [Paul] should be held liable

14
Case 2:24-cv-01558-PP    Filed 01/31/25    Page 14 of 18    Document 4

because [he] carried out [his] job exactly as [he] was supposed to." Id. Paul cannot be held liable for applying the DOC rules to the plaintiff exactly as they are written. The plaintiff's failure to follow those rules does not state a claim. Because the plaintiff has not stated a claim against Paul, he necessarily fails to state a claim against Stevens for not correcting Paul's alleged conduct. See Gordon v. Degelmann, 29 F.3d 295, 298 (7th Cir. 1994).

The complaint does not state a viable federal claim. Even if it did, the plaintiff would not be entitled to the declaratory or injunctive relief that he seeks. The plaintiff sues the defendants in their individual capacities only, and "section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." Greenawalt v. Ind. Dep't of Corr., 397 F.3d 587, 589 (7th Cir. 2005) (citing Luder v. Endicott, 253 F.3d 1020, 1024–25 (7th Cir. 2001)). Moreover, "declaratory or injunctive relief is only proper [under §1983] if there is a continuing violation of federal law." Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Al–Alamin v. Gramley, 926 F.2d 680, 685 (7th Cir. 1991)). The plaintiff seeks relief for completed, past conduct, so he cannot obtain declaratory or injunctive relief. The plaintiff also seeks a rehearing or expungement of his disciplinary charges and conviction. But the plaintiff cannot seek this relief under §1983. His recourse to seek expungement of his disciplinary conviction is a petition for a writ of *habeas corpus*. See Greene v. Meese, 875 F.2d 639, 640 (7th Cir. 1989) (citing Preiser v. Rodriguez, 411 U.S. 475 (1973); and Larsen v. Sielaff, 702 F.2d 116, 118 (7th Cir. 1983)).

Because the complaint does not state a federal claim, the court will not exercise supplemental jurisdiction over the plaintiff's state law claims of negligence, libel and slander. The court will dismiss those state law claims without prejudice under 28 U.S.C. §1367(c)(3).

District courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, but the court need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). The plaintiff's complaint is thorough in its allegations of facts surrounding his claims. The court finds that amendment would be futile because further elaboration would not alter the court's conclusions that the conduct the plaintiff alleges does not state a federal claim. The court will not allow the plaintiff to amend his complaint.

## II. Conclusion

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The clerk will enter judgment accordingly.

The court **ORDERS** that the plaintiff's potential state law claims are **DISMISSED WITHOUT PREJUDICE**. See 28 U.S.C. §1367(c)(3).

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court.* See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff another "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 31st day of January, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**