UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAENE A. PIONTEK,

                            Plaintiff,

   v.                                                   Case No. 24-cv-1558-pp

DR. ONJUKKA, *et al.*,

                            Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 6), VACATING JUDGMENT (DKT. NO. 5), REOPENING CASE AND SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

---

On January 31, 2025, the court screened plaintiff Laene A. Piontek's *pro se* complaint under 42 U.S.C. §1983, determined that it did not state a claim and dismissed it without providing the plaintiff an opportunity to amend his complaint. Dkt. No. 4. The court explained that the plaintiff had not stated a claim of retaliation against his dentist, Dr. Tommy Onjukka, because he had alleged only that he threatened to engage in protected conduct before the supposed retaliatory action, and the deprivation the plaintiff suffered would have occurred even without his threat. Id. at 7–9. The court found that the plaintiff did not state a due process claim against Lieutenant Anthony Matushak because he did not allege "facts showing that he had a protected interest entitling him to due process protections." Id. at 9–11. Nor had the plaintiff stated a claim against Matushak for imposing a harsher penalty after the plaintiff requested a due process hearing. Id. at 11. The court then explained why the remainder of the plaintiff's allegations did not state a claim against the other named defendants. Id. at 11–15.

On February 28, 2025, the court received the plaintiff's motion for reconsideration under Federal Rule of Civil Procedure 59 and a proposed amended complaint. Dkt. No. 6. The court will address each of those filings.

## I. Motion for Reconsideration (Dkt. No. 6)

The plaintiff concedes that the failure of his original complaint to state a claim "was Plaintiff's fault." Dkt. No. 6 at 1. He says that he received assistance from another incarcerated person, with whom he "did not have enough time to discuss the entirety of the facts in this case." Id. The plaintiff says he has "new facts" showing that he filed complaints before Dr. Onjukka's alleged retaliatory conduct. Id. The plaintiff asserts that these "new facts" prove Onjukka had a retaliatory motive behind his decision to issue the plaintiff a conduct report. Id. The plaintiff's motion does not say anything about the other defendants or his other dismissed claims. The plaintiff asks the court to reconsider its previous ruling and allow him to proceed on his proposed amended complaint against Onjukka and Lieutenant Matushak. Id.

The plaintiff provided declarations from himself and the incarcerated person who is assisting him, Mitchell Zimmerman. Dkt. Nos. 7, 8. The plaintiff avers in his declaration that he recognized the "disconnect" between what happened and the information he gave to Zimmerman and realized that "the complaint was fixable." Dkt. No. 7. He says that he gave Zimmerman additional documentation to support his claims in a new complaint. Id. Zimmerman avers that he is assisting the plaintiff in this case because the plaintiff "has no idea what he is doing." Dkt. No. 8. He says that the plaintiff gave him "new information" that Zimmerman did not know existed when he drafted the original complaint. Id.

Under Federal Rule of Civil Procedure 59(e), a party may move to alter or amend a judgment within twenty-eight days of the entry of judgment. The court may grant a motion under Rule 59(e) only if a party can "clearly establish" either newly discovered evidence or a manifest error of law or fact warranting relief. Harrington v. City of Chicago, 433 F.3d 542, 546 (7th Cir. 2006) (citing Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1122 n.3 (7th Cir. 2001), and Bordelon v. Ch. Sch. Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir. 2000)). A "manifest error of law" "is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). "Relief under Rule 59(e) is an 'extraordinary remed[y] reserved for the exceptional case.'" Vesey v. Envoy Air, Inc., 999 F.3d 456, 463 (7th Cir. 2021) (quoting Gonzalez-Koeneke v. West, 791 F.3d 801, 807 (7th Cir. 2015)).

The plaintiff has not suggested that the court made a manifest error of law or fact in the previous order. He concedes that *he* made an error by not including sufficient information in his complaint to state a federal claim. He says that he since has provided the full information of his claims to another incarcerated person who is assisting him in preparing his legal complaints. That person—Zimmerman—says that the plaintiff "has no idea what he is doing," yet the plaintiff says that the *plaintiff* is the one who determined from the court's previous order that his complaint was "fixable" with new information. The plaintiff did not give the court any new documents, nor does he explain what new information he gave Zimmerman to prepare an amended complaint. Instead, he attached a proposed amended complaint with new allegations. But none of this information is *new* evidence; the plaintiff already

knew about the complaints he filed before seeing Onjukka, and he says he has papers documenting those complaints. This information is *newly presented* and does not provide a proper ground for altering the judgment. See Bordelon, 233 F.3d 524, 529 (7th Cir. 2000) (quoting Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996)) (explaining that Rule 59(e) "does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment"). That the plaintiff now has provided the court with information that he could have and should have provided earlier does not make his case an exceptional one warranting relief under Rule 59.

The court is inclined to deny the plaintiff's motion for reconsideration because he has not stated a proper basis to grant it. But the court has reviewed the plaintiff's proposed amended complaint and finds that it may state a claim on which he may proceed and on which he may have been able to proceed based on information presented in his original complaint. For that reason, the court will grant the plaintiff's motion for reconsideration. The remainder of this order screens the proposed amended complaint. Dkt. No. 6-1. The court advises the plaintiff that it is *his* responsibility to ensure his filings are accurate and complete, even if he is receiving assistance from another incarcerated person.

## II.     Screening the Amended Complaint (Dkt. No. 6-1)

### A.     Federal Screening Standard

As the court explained in the previous order, it must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may

4

Case 2:24-cv-01558-PP     Filed 06/05/25     Page 4 of 17     Document 9

be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The amended complaint renames Dr. Onjukka and Lieutenant Matushak at Green Bay Correctional Institution as the only defendants. Dkt. No. 6-1 at ¶4. Unlike the original complaint, the amended complaint sues the defendants in their individual and official capacities. Id.

The plaintiff alleges that while he was incarcerated at Dodge Correctional Institution, dental staff provided him "a clear dental care plan stating that Plaintiff should receive two root canals ending with those two teeth being crowned." Id. at ¶5. Dental staff told him that if they could not immediately perform the root canals, then the plaintiff should receive a filling in one of his affected teeth to preserve it and avoid an extraction. Id.

The plaintiff alleges that he later was transferred to Green Bay, where Onjukka became his dentist. Id. at ¶8. He says that on June 28, 2023, he sent a Dental Service Request (DSR) to dental staff, relaying his dental plan from staff at Dodge. Id. at ¶9. He says that Onjukka received this request and placed the plaintiff on the routine wait list. Id. The plaintiff alleges that prison policy allows dentists to put an incarcerated person on the routine wait list for up to forty weeks. Id. at ¶10. Otherwise, the dentist may place a patient on the essential wait list, on which he will be seen within two months. Id. The plaintiff states that Green Bay's dental office is not properly staffed, and that staff refuse to perform root canals and rarely perform fillings. Id. at ¶11. He alleges that Onjukka and dental staff instead "intentionally wait until the inmates complain about serious pain and suffering [*sic*] and then pull the tooth." Id. He asserts that "no dentist in good standing" would agree that this practice "is the proper standard of care." Id.

The plaintiff alleges that on August 3, 2023, he sent a second DSR asking to be placed on an emergency filling list until dental staff could cap his affected tooth. Id. at ¶12. He says that Onjukka responded and again told the plaintiff that he was on the routine wait list. Id. On December 24, 2023, the plaintiff submitted a third DSR stating that his tooth was causing him pain, and that he "was getting angry" and concerned that he might lose his tooth. Id. at ¶13. He opined that this "could have been prevented" and threatened to "file a lawsuit and complaint" if he lost his tooth. Id. He says that Onjukka responded again and refused to move the plaintiff to the essential wait list despite his pain, which the plaintiff says satisfied "the requirements of that list." Id.

On February 20, 2024, the plaintiff sent a fourth DSR requesting an emergency filling to prevent him from losing his tooth. Id. at ¶14. He reiterated that pulling or losing his tooth was preventable and that his tooth was causing him pain. Id. He says that Onjukka responded, reminded him that he was on the routine wait list for treatment and told him that he could request an extraction if his condition worsened. Id. The plaintiff alleges that Onjukka kept him on the routine wait list without even reading his DSR. Id.

The same day, the plaintiff sent what he calls "a complaint" to his unit manager, detailing his concerns about his dental treatment and the DSRs he submitted about his need for treatment. Id. at ¶15. He says that the unit manager sent his complaint to the health services unit instead of to the health services manager, and that a nurse advised him to "file a formal complaint" if he had an issue. Id. He says that his complaint also was forwarded to dental staff, and that Onjukka again reminded him that he was "on the list" for treatment and could request an extraction if he experienced swelling or pain.

Id. The plaintiff says that on February 27, 2024, he filed "a formal complaint" with the institutional complaint examiner. Id. at ¶17.

On March 8, 2024, the plaintiff saw a dental hygienist for teeth cleaning. Id. at ¶16. He complained to her that he feared he would lose his tooth because of "inadequate care." Id. He says that "[t]he Dentist came in" and told him that he would be seen when he was next on the wait list for fillings unless he wanted an extraction. Id. The plaintiff alleges that the notes from this visit state, "the Dental Department is well aware of Plaintiff's tooth issues." Id. He says that he again complained about his pain, but that dental staff still did not move him to the essential wait list. Id.

On March 21, 2024, an institutional complaint examiner reviewed the plaintiff's administrative complaint. Id. at ¶17. The complaint examiner noted that he contacted dental staff, who stated that the plaintiff was seen on March 8 and was on the routine wait list. Id. The complaint examiner recommended dismissal of the complaint. Id.

On June 14, 2024, the plaintiff had an assessment ahead of seeing Onjukka. Id. at ¶18. He says that he told the dental assistant about the wait list and complained about his condition. Id. The plaintiff says that he told the dental assistant "that he did not want to have to file a complaint and lawsuit regarding them pushing off [his] dental needs." Id. He asserts that he then "stated jokingly that he did not want to have to take the air conditioner he had previously installed." Id. The plaintiff alleges that Onjukka had been reviewing his medical chart, which contains his records and complaints against dental staff. Id. He says that Onjukka overheard this conversation and then came into the room and told the plaintiff that he was "sick of [the plaintiff's] complaining." Id. The plaintiff alleges that Onjukka told the plaintiff that he was "going to write

[the plaintiff] a conduct report for threatening and soliciting the Dental Assistant." Id. The plaintiff says that the dental assistant tried to assure Onjukka that the plaintiff was not threatening or soliciting her, but that Onjukka wrote the conduct report. Id.

On June 17, 2024, Lieutenant Matushak delivered the conduct report to the plaintiff at his cell, telling the plaintiff that he was "lucky" that Matushak was "not sending [him] to the hole." Id. at ¶19. He offered the plaintiff an uncontested disposition of sixteen days' cell confinement and told the plaintiff that if he contested the report, Matushak would be the presiding officer deciding whether the plaintiff "[was] guilty." Id. The plaintiff says that Matushak told him that "he believes staff over inmates every time" and that Matushak "would increase the disciplinary sanction if Plaintiff contested it." Id. The plaintiff says that he nonetheless requested a due process hearing, which occurred on June 25, 2024. Id. at ¶¶19–20. He says that Matushak refused to allow him to call the dental assistant as a witness "specifically to hide the misconduct by Defendant Onjukka." Id. Matushak found the plaintiff guilty of threats and soliciting an employee and imposed a disciplinary sentence of twenty-one days' cell confinement. Id.

The plaintiff claims that Onjukka's failure to properly treat his dental issue violated his rights and "led to such a painful condition that Plaintiff needed to have a tooth pulled" over a year after his initial DSR. Id. at ¶22. He claims that Onjukka also retaliated against him for threatening to file a complaint by writing the conduct report for threatening and soliciting staff. Id. at p.5. The plaintiff asserts that his decision to contest the conduct report at a disciplinary hearing was a protected activity, and that Matushak retaliated against him by imposing a higher sentence after the hearing than the one

9

Case 2:24-cv-01558-PP    Filed 06/05/25    Page 9 of 17    Document 9

offered before the hearing. Id. at ¶21. He seeks declaratory judgment stating that the defendants violated his rights, injunctive relief ordering the Department of Corrections to provide proper treatment and punitive and compensatory damages. Id. at p.5.

    C.    <u>Analysis</u>

The plaintiff first reasserts that Onjukka retaliated against him for threatening to file a complaint or lawsuit about his dental services, by giving the plaintiff a conduct report for threatening and soliciting staff. The plaintiff newly alleges that for about a year prior to receiving the conduct report, he filed requests and complaints about his treatment, including an administrative complaint in February 2024. The court explained in the previous order that to "state a claim of retaliation under the First Amendment, the plaintiff must allege that 'he engaged in a protected activity,' 'he suffered a deprivation likely to prevent future protected activity' and 'his protected activity was a motivating factor in the defendants' decision to retaliate.'" Dkt. No. 4 at 7 (quoting <u>Daugherty v. Page</u>, 906 F.3d 606, 610 (7th Cir. 2018)).

The court previously determined that the plaintiff's allegations failed to state a claim of retaliation for two independent reasons. First, he had only *threatened* to file a complaint or lawsuit, which is not protected conduct. Id. at 7–8 (citing <u>Bridges v. Gilbert</u>, 557 F.3d 541, 555 (7th Cir. 2009)). The amended complaint newly alleges that the plaintiff filed numerous informal complaints about his treatment through DSRs and a formal administrative complaint before Onjukka gave him the conduct report. The plaintiff also newly alleges that Onjukka was reviewing his file before issuing him the conduct report, which suggests that Onjukka knew about the plaintiff's complaints beforehand.

These new facts are sufficient to allege that the plaintiff engaged in protected conduct before he received the conduct report.

But the plaintiff still has not satisfied the third element of a retaliation claim. The amended complaint alleges that Onjukka told the plaintiff that Onjukka was "sick of" the plaintiff's complaining before issuing the plaintiff the conduct report. In his motion for reconsideration, the plaintiff asserts that "'[d]isparaging comments made about Plaintiff's protected conduct followed by adverse treatment is sufficient to defeat summary judgment.'" Dkt. No. 6 at 2. The plaintiff attributes that quotation to Magyar v. Saint Joseph Reg'l Med. Ctr., 544 F.3d 766, 773 (7th Cir. 2008), although he incorrectly lists the plaintiff–appellant's name as "Mayer." Id. But that quote does not appear in Magyar.

The plaintiff then asserts that to prevail on his retaliation claim, he needs only to "prove that his constitutionally protected conduct was a motivating factor in defendant's actions." Dkt. No. 6 at 2. He says that a "motivating factor is a factor that weighs in the defendant's decision to take the action complaint [*sic*] of, it is a consideration present in his mind that pushes him toward the action." Id. The plaintiff cites "Mason v. United States Dep't of Labor, 409 F.3d 1001, 1005–1006 (7th Cir. 2005)." Id. But that citation leads to United States v. Torres, 409 F.3d 1000, 1001 (8th Cir. 2005), which is a criminal appeal before the Eighth Circuit Court of Appeals. The court could not find the Mason case that the plaintiff cites.

But the fact that the plaintiff provided incorrect case citations in support of his statement of this standard is immaterial because he does not state the correct standard for this element of a retaliation claim. The court explained in its previous order that to prove the third element, "the plaintiff must show that the protected activity was 'a but-for cause' of the adverse

action, 'meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'" Dkt. No. 4 at 8 (quoting Nieves v. Bartlett, 587 U.S. 391, 398–99 (2019); and citing Winston v. Fuchs, 837 F. App'x 402, 404 (7th Cir. 2020)). The plaintiff still has not satisfied this standard. Although he newly alleges that Onjukka knew about his complaints and said he was sick of them before issuing the conduct report, the plaintiff realleges that Onjukka entered the room only *after* the plaintiff made his comments about wanting better treatment and stealing the air conditioner, and he realleges that Onjukka issued him the conduct report for threatening and soliciting staff, which is how Onjukka interpreted the comments. These allegations still show that the basis for Onjukka issuing the conduct report was not the plaintiff's *complaints* but instead was the plaintiff's *comments* to the dental assistant, even though the plaintiff says he was joking. In other words, even if the plaintiff had not filed his complaints beforehand, Onjukka still would have issued him the conduct report based solely on the plaintiff's comments to the dental assistant. See id. at 8–9 (citing cases); Winston, 837 F. App'x at 404 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285–86 (1977) (noting that "even if" incarcerated person's grievance "'play[ed] a part in th[e] decision' to discipline [him], no First Amendment violation occurred if 'the same decision would have been reached' had [the incarcerated person] filed no grievance"). The court finds that the amended complaint does not state a First Amendment retaliation claim against Onjukka.

In its previous order, the court did not determine whether the plaintiff had stated a claim about his dental treatment because the original complaint did not assert that Onjukka was deliberately indifferent to his dental needs.

But on reconsideration of that order, the court finds that it should have analyzed whether the complaint stated an Eighth Amendment claim against Onjukka. The amended complaint, unlike the original, does assert a claim of deliberate indifference against Onjukka.

The court reviews these allegations under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendant was "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an incarcerated person's health or safety and disregards that risk. Id. at 837; Perez, 792 F.3d at 776.

The plaintiff alleges that Onjukka did not provide him prompt medical attention for his dental issues and pain despite responding to his requests for dental treatment. He alleges that Onjukka could have and should have placed him on the essential wait list for treatment after the plaintiff complained about his pain and expressed concern that he would lose his tooth. He says that there was no need for him to remain on the routine wait list, where he waited for a year for treatment and eventually had his tooth extracted. The court finds that these allegations satisfy the objective component of an Eighth Amendment claim. See Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) (noting that tooth decay and pain "can constitute an objectively serious medical condition because of pain and the risk of infection"). The court also finds that the amended

complaint sufficiently alleges that Onjukka was aware of the plaintiff's worsening condition but failed to (or intentionally chose not to) place him on the essential wait list for quicker treatment. The court will allow the plaintiff to proceed on this claim against Onjukka.

The court finds that the amended complaint does not state a claim against Matushak for the same reasons explained in the previous order. The plaintiff adds no detail to his original allegations against Matushak. He says that Matushak offered him sixteen days' cell confinement if he accepted an uncontested disposition, warned the plaintiff that he would likely give him a higher punishment if the plaintiff contested the conduct report and then gave the plaintiff a more severe punishment after the plaintiff lost at the disciplinary hearing. The court explained in the previous order that "Matushak was allowed to offer the plaintiff a lower disciplinary sentence if he accepted the charges and declined the hearing. . . . By requesting the hearing, the plaintiff opened himself up to the possibility of a more significant punishment because Matushak 'had discretion to impose a more severe disposition.'" Dkt. No. 4 at 11 (quoting Nelson v. Stevens, Case No. 18-CV-238, 2020 WL 2112270, at *13–*14 (W.D. Wis. May 4, 2020), aff'd, 861 F. App'x 667 (7th Cir. 2021)). The court has no reason to alter its conclusion that "Matushak did not violate the plaintiff's rights by imposing a more severe punishment after the hearing than the punishment he offered the plaintiff in exchanged for an uncontested resolution." Id. The court will dismiss Matushak as a defendant.

Finally, the plaintiff seeks to sue Onjukka in his individual and official capacities. Claims against state actors in their official capacities represent another way to plead an action against the entity that they represent or for which they work. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell

14
Case 2:24-cv-01558-PP    Filed 06/05/25    Page 14 of 17    Document 9

v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The court construes the official capacity claim as having been brought against the Department of Corrections, the agency for which Onjukka works. Id. at 165–66. And because claims against the DOC are "no different from a suit against the State itself," the court construes this claim as if brought against the State of Wisconsin. See Will, 491 U.S. at 71 (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. That means the plaintiff cannot recover damages against the defendant in his official, versus individual, capacity. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

In addition to damages, the plaintiff seeks declaratory judgment that Onjukka's actions violated his rights and future injunctive relief in the form of a court order directing the prison to provide him proper treatment. As the court explained in the previous order, the plaintiff cannot seek "relief for completed, past conduct." Dkt. No. 4 at 15. The plaintiff says that he has had his tooth extracted, which suggests that there is no ongoing violation of his rights. But he also seeks proper future treatment, which suggests that he continues to receive inadequate dental treatment. Because the plaintiff's request is unclear, the court will allow him to proceed on his request for prospective injunctive relief but will not allow him to proceed on his request for declaratory judgment, which would relate only to Onjukka's past conduct. See id. (citing Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Al–Alamin v. Gramley, 926 F.2d 680, 685 (7th Cir. 1991)). The defendant may seek to dismiss the plaintiff's request for injunctive relief if the evidence shows that he is no longer being provided inadequate dental treatment.

In summary: the plaintiff may proceed on an Eighth Amendment claim against Onjukka in his individual capacity for damages. He may proceed against Onjukka in his official capacity for injunctive relief but not for declaratory relief. He may not proceed on any other claims or against any other defendants. The court will dismiss Matushak and the defendants named only in the original complaint.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for reconsideration. Dkt. No. 6.

The court **VACATES** the judgment (Dkt. No. 5) and **ORDERS** that this case is **REOPENED**.

The court **DIRECTS** the clerk to separately docket the proposed amended complaint at Dkt. No. 6-1. This will be the operative complaint going forward.

The court **DISMISSES** defendants Shelley Tilot, Anthony Matushak, Christopher Stevens, Zack Paul, Zenobia Haniff, Cindy O'Donnell and Emily Davidson.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendant Dr. Tommy Onjukka. Under the informal service agreement, the court **ORDERS** the defendant to respond to the amended complaint within sixty days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 5th day of June, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.